UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CATHERINE R. DAVIS,

      Plaintiff,    Case No. 07-12270

vs.             HONORABLE BERNARD A. FRIEDMAN
              HONORABLE STEVEN D. PEPE
JAMES J. BANTE,

      Defendant.
===========================/

## REPORT AND RECOMMENDATION

  Plaintiff Davis filed this action against Defendant James J. Bante, a Benefits Advisor at Daimler Chrysler Corporation, on May 4, 2007, in the 36th District Court for the County of Wayne, State of Michigan, setting forth claims related to the payment of pension funds. Because Plaintiff's claims are preempted and governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, Defendant filed a notice of removal of this action to this Court on May 25, 2007, pursuant to 28 U.S.C. § 1441(a) and (b) (Dkt. #1). On May 30, 2007, Defendant filed his motion to dismiss, or in the alternative, motion for summary judgment, arguing that Plaintiff's claim should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim for which relief can be granted, or in the alternative, that Defendant is entitled to summary judgment because Plaintiff can prove no set of facts in support of her claim that would entitle her to relief (Dkt. #3). All pre-trial matters were referred (Dkt. #5). For the reasons stated below, it is **RECOMMENDED** that Defendant's motion be **GRANTED,** and this case be dismissed.

1

**I.     BACKGROUND FACTS**

Catherine Davis filed a one paragraph Complaint, with attachments, that states, in total, the following:

> I received Form 1099 via mail from Merrill Lynch for $21,714.99. Affidavit of Forged Endorsement was completed and forwarded to Merrill Lynch. Forged endorsement replacement check in the amount of $21,714.99 has not been received. Plus court cost three billion.
>
> In addition, a pattern of fraud developing in the marketplace.

(Dkt. #3, Complaint, with Exhibits, Ex. A).

The attachments to the Complaint are as follows:

> 1. Correspondence dated January 3, 2007, from Kevin P. Carroll, Daimler Chrysler Corporation Savings Plan Administration, to Catherine R. Davis;
>
> 2. E-mail dated May 8, 2006, written by Kevin P. Carroll; and
>
> 3. Correspondence dated May 9, 2006, written by Kevin P. Carroll to Catherine R. Davis.

(Dkt. #3, attachments to Complaint, Ex. A).

The entire content of the May 8, 2006, e-mail written by Kevin P. Carroll is as follows:

> Catherine Davis is claiming that she never received any funds in the form of a withdrawal from her Merrill Lynch 401(k) account and for which she received a tax form 1099R in January 2002.
>
> She is a salary union employee who had taken out three loans from her 401(k) plan account (January 1998, January 1999 & May 2000). She had been making regular loan payments until she was placed on a disciplinary leave of absence from September 2000 until February 2005. While on the LOA, she failed to make her loan payments and, after receiving several "missed payment" letters from Merrill Lynch, the loans were defaulted in June 2001. When the loans are defaulted, the outstanding loan balance is treated as a taxable withdrawal in the year of default, and reported on tax form 1099R. She received a 1099R in January 2002 (2001 tax year). The handling of this loan default by Merrill Lynch was in accordance with IRS requirements.

> I tried to call Ms. Davis but the phone number listed on PeopleSoft is not her number. I will send her a letter tomorrow explaining the source of the income on the 1099R she received in 2002. I will copy you on the letter.

*Id.* at 5.

The entire contents of the May 9, 2006, correspondence attached to the Complaint from Kevin Carroll to Catherine R. Davis is as follows:

> I am responding to your recent correspondence sent to Dr. Dieter Zetsche, regarding a tax form 1099-R you received in 2002 from Merrill Lynch. According to your letter, this form reported your receipt of the taxable income of $21,714.99 in calendar year 2001.
>
> I reviewed your situation with Merrill Lynch and am now able to explain why you received a form 1099-R. In January 1998 and January 1999 and again in May 2000, you took out loans from your Daimler Chrysler Salaried Employees' Savings Plan account. The monthly payments for these three loans were being deducted from your paycheck. In September 2000, you were placed on a leave of absence and remained on that status until February 2005. While on this leave of absence, you did not make your monthly loan payments. Merrill Lynch sent you several letters informing you of the missed payments and the consequences of not making the required payments.
>
> The Internal Revenue Service requires 401(k) plan providers to collect loan payments and to default such loans if payments are missed. Since you did not make the required payments while on the leave of absence, Merrill Lynch had to default your three loans in June 2001. When loans are defaulted, the outstanding loan balance is treated as taxable income in the year of default. As of June 2001, the outstanding balance of your three defaulted loans was $21,714.99 for the year 2001.
>
> I am hopeful that this information helps you understand the reason why you received the 1099-R in 2002. Should you have any additional questions, feel free to contact me at the address indicated at the bottom of this letter.

*Id.* at 6.

Finally, the entire contents of the correspondence dated January 3, 2007, from Kevin Carroll to Catherine Davis, which is attached to the Complaint, is as follows:

> I am responding to the letter you recently sent to Mr. James Bante, wherein you reference a "check in the sum of $21,714.99 payable to (you), the check replacement has not yet been received."

3

> I sent a letter (copy enclosed) to you in May 2006 explaining that the Tax Form 1099-R (sent in 2001) was issued to you because your three Salaried Employees' Savings Plan loans had been defaulted. As mentioned in my previous letter, the Internal Revenue Service requires 401(k) plan providers to collect loan payments and to default such loans if payments are missed. Since you did not make the required payments, Merrill Lynch had to default your three loans in June 2001. As a result of the default, the outstanding balance of the three loans was considered taxable income. Accordingly, the Tax Form 1099-R reported the amount of the defaulted loans as taxable income of $21,714.99 in year 2001. The only checks issued to you (and which you cashed) were for the loans you took out in the years 1998, 1999 and 2000. Since you did not make the required loan payments, all three loans were defaulted and reported as taxable income in 2001.
>
> I believe that Daimler Chrysler and Merrill Lynch have made a good faith effort to explain to you the reason for the 1099-R form and why you are not entitled to a "replacement" check. As such, we consider this matter closed and we will not respond to any additional letters you send to us concerning this same matter.

*Id.* at 4.

## II. ANALYSIS

### A. <u>Legal Standards</u>

Fed. R. Civ. P 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." "The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even in everything alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. ----, 127 S.Ct. 1955, 1965 (2007), *Erickson v. Pardus*, 127 S.Ct. 2197, 2200 (2007). "Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations," *Twombly*, 127 S.Ct. at 1965 (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)).

"However, while liberal, this standard of review does require more than the bare

assertion of legal conclusions." *Columbia Natural Res., Inc. V. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1994). "In practice, a ... complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *In re DeLorean*, 991 F.2d 1236, 1240 (6th Cir. 1993) (emphasis in original) (quoting *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir.1988)). *See also*, *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir.1987) (liberal Rule 12(b)(6) review is not afforded legal conclusions and unwarranted factual inferences); *Ana Leon T. v. Federal Reserve Bank*, 823 F.2d 928, 930 (6th Cir. 1987) (per curiam) (mere conclusions are not afforded liberal Rule 12(b)(6) review).

*Conley v. Gibson*, 355 U.S. 41, 46 (1957), spoke of "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can *prove no set of facts* in support of his claim which would entitle him to relief." (Emphasis supplied.). *Twombly*, notes that under a "literal reading of *Conley's* 'no set of facts' standard, a wholly conclusory statement of claim would survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery." *Twombly*, 127 S.Ct. at 1968. *Twombly*, rejects this literal reading of *Conley* and required that pleadings state sufficient facts to show not just a possible, but a "plausible" claim of relief. Instead of the 'no set of facts' standard of *Conley*, *Twombly* endorsed the standard that a complaint be plausible to the extent that from the facts alleged there is a " 'reasonably founded hope' that a plaintiff would be able to make a case," citing *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 347 (2005) and its quote from *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 741 (1975).

5

B. **Factual Analysis**

1. *Statute of Limitations*

Congress did not provide a statute of limitations for actions brought pursuant to 29 U.S.C. § 1132(a)(1)(B). The United States Supreme Court, in *Del Costello v International Brotherhood of Teamsters*, 462 US 151, 158, (1983), held that Congress intended that the Courts should apply the most closely analogous statute of limitations under state law.

Federal Courts have consistently recognized that an ERISA claim for benefits is most analogous to a breach of contract claim, and is therefore subject to the state's statute of limitations for contracts. *See, Meade v Pension Appeals and Review Commission*, 966 F.2d 190, 194-195 (6th Cir. 1992). The Michigan Breach of Contract Statute of Limitations is six years. *See*, MCL § 600.5807(8); *see, also, Michigan United Food and Comerical Workers' Unions Drug and Mercantile Employees Joint Health and Welfare Fund v Muir Company, Inc.*, 992 F.2d 594, 597 (6th Cir. 1992).

Although the statute of limitations for a claim for benefits under ERISA is borrowed from State Law, Federal Law determines when an ERISA claim accrues. *Id*. at 598. Under Federal Law, "an ERISA claim accrues and a limitations period begins to run when the 'plaintiff discovers, or with due diligence should have discovered the injury that is the basis of the action.'" *Armbruster v K-H Corp*., 206 F. Supp 2d 870, 887 (E.D. Mich. 2002); (*quoting Michigan United Food and Commercial Workers Union,* 992 F.2d at 597).

The injury that Plaintiff claims is the basis for her claim here is that she did not receive certain monies that she claims were distributed from her Savings Plan Account. Because her Complaint contains attachments, including letters describing the undisputed details as to what

6

happened in this matter, the facts in the attachments may be taken as true pursuant to this Fed R. Civ. P. 12 (b)(6) Motion. Plaintiff's Complaint indicates that she did not receive a replacement check for one she contends was forged and apparently cashed by someone else. Plaintiff does not assert facts contesting the fact that no check was issued to her in 2001.[1] The only checks issued to her were for the three loans that were made in January of 1998, January of 1999 and May of 2000. If she did not receive any or all of those checks, based upon loan documents that were signed by her, she was required to bring this action no later than May 31, 2006, which would be six years after the date that she signed the last loan document, and did not receive her check.

This action was not filed until May of 2007. It is clearly outside of the statute of limitations, and Plaintiff's claim is, therefore, time barred.

### 2. *James J. Bante Is Not A Proper Party To This Litigation*

Even assuming *arguendo* that Plaintiff's claim was not time barred, James J. Bante is not a proper party to this litigation. Plaintiff claims that she has not received a check equal to the amount of the 1099-R that she received in January of 2002. Her claim, therefore, is for a benefit pursuant to the terms of the Daimler Chrysler Salaries Employees' Savings Plan. Pursuant to ERISA § 502(d)(2); 29 U.S.C. § 1132(d)(2), her claim for this benefit is a claim against the Plan itself.[2] Accordingly, it is inappropriate to sue Mr. Bante as an individual.

---

[1] Plaintiff has alleged no facts that would support a plausible conclusion that any check was, or reasonably should have been, issued to her in 2001, the year when she defaulted on her loan payments.

[2] 29 U.S.C. § 1132(d)(2) states:

Any money judgment under this subchapter against an employee benefit plan

Even if the Court were to interpret Plaintiff's claim as a breach of fiduciary duty claim, it seeks to award money to Plaintiff, and therefore, fails to state a claim upon which relief can be granted. Breach of fiduciary duty claims only authorize relief to the Plan itself, and not to individual beneficiaries. ERISA provides for breach of fiduciary duty claims under Section 502(a)(2); 29 U.S.C. § 1132(a)(2), which authorizes civil actions for appropriate relief under ERISA § 409; 29 U.S.C. § 1109. ERISA § 409 "makes fiduciaries liable for breach of [their] duties, and specifies the remedies against them," but only allows recovery that "inures to the benefit of the Plan as a whole." *Massachusetts Life Ins Co v. Russell*, 473 U.S. 134, 140 (1985).

In *Massachusetts Life Insurance Company*, the Supreme Court held that Congress did not provide for a cause of action for individual beneficiaries claiming extra-contractual damages caused by the untimely processing of benefit claims. "A contextual reading of the statute makes it abundantly clear that its draftsman were primarily concerned with the possible misuse of plan assets, and with remedies that would protect the entire plan, rather than with the rights of an individual beneficiary." *Id*. at 142. "[T]he entire text of § 409 persuades us that Congress did not intend that section to authorize any relief except for the plan itself." *Id*. at 144.

Nor is this claim saved by the Supreme Court's recognition that individuals may seek equitable relief for breach of fiduciary duty under § 502(a)(3). *See, e.g., Variety Corp. v. Howe*, 516 U.S. 489 (1996). It is clear from Plaintiff's Complaint that she is seeking "damages" for herself. The Supreme Court has reconfirmed that a request for monetary relief for damages incurred is not an equitable remedy, and that a § 502(a)(3) claim is only available when the

---

shall be enforceable only against the plan as an entity and shall not be enforceable against any other person unless liability against such person is established in his individual capacity under this subchapter.

8

remedy is equitable:

> Almost invariably . . . suits seeking (whether by judgment, injunction, or declaration) to compel the Defendant to pay a sum of money to the Plaintiff are suits for 'monetary damages,' as that phrase has traditionally been applied, since they seek no more than compensation for loss relating from the Defendants' breach of legal duty. And money damages are, of course, the classic form of legal relief.

*Great West Life & Annuity Ins v. Knudson*, 534 U.S. 204 (2002) (internal citations omitted).

Since there is no breach of fiduciary duty claim permitted in this litigation, to name Mr. Bante as a Defendant is improper. *See, Geiger v. UNUM Life Insurance Company of America*, 213 F Supp 2d 813 (N.D. Ohio 2002). The proper named party in this action is the ERISA Plan.

Prior to the changes in 1996, this Court used to allow a plaintiff notice of the deficiency of the complaint and an opportunity to cure the defect. *Tingler v. Marshall,* 716 F.2d 1109 (6th Cir. 1983). Yet, this common sense approach was ended in 1996 with Congress' passage of the Prison Litigation Reform Act. In *McGore v. Wrigglesworth,* 114 F.3d 601 (6th Cir. 1997), the Sixth Circuit held that district courts must screen complaints from indigent non-prisoners. Moreover, "the screening must occur even before process is served or the individual has had an opportunity to amend the complaint. The moment the complaint is filed, it is subject to review under §1915(e)(2). The complaint must be dismissed if it falls within the requirements of §1915(e)(2) when filed." *Id*. at 608-609.[3]

---

[3] The language of §1915(e)(2) is mandatory in its use of "shall dismiss" unlike the language of its predecessor version in superceded §1914(d). Section 1915(e)(2) is essentially identical to the early *sua sponte* dismissal provisions of §1915A(b) in the Prisoner Litigation Reform Act except that §1915A applies only to prisoners and does not contain the provision concerning the allegation of poverty. Yet, complaints by non-prisoners are subject to the screening process required §1915(e)(2) even if the non-prisoner is not seeking waiver of prepayment of fees. *McGore,* 114 F.3d at 604. The language of §1915(e)(2) does not differentiate between cases filed by prisoners and cases filed by non-prisoners.

Under § 1915(e)(2), notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that--

(A) the allegation of poverty is untrue; or

(B) the action or appeal--

    (i) is frivolous or malicious;

    (ii) fails to state a claim on which relief may be granted; or

    (iii) seeks monetary relief against a defendant who is immune from such relief.

Because Plaintiff has only filed a claim against James J. Bante as a Defendant and has not served her Plan as is required under ERISA § 502(d)(2); 29 U.S.C. § 1132(d)(2), she has failed to state a claim on which relief may be granted pursuant to § 1915(e)(2). Accordingly, it is **RECOMMENDED** that Defendant's motion be **GRANTED**, and this case be dismissed in its entirety.

### III. RECOMMENDATION

For the reasons indicated above, it is **RECOMMENDED** that Defendant's motion be

---

*In McGore v. Wrigglesworth,* 114 F.3d 601, 612 (6th Cir. 1997), the Sixth Circuit explained:

> The Prison Litigation Act has overruled the procedures set forth in *Tingler v. Marshall,* 716 F.2d 1109 (6th Cir.1983). In *Tingler,* we stated that a district court may not *sua sponte* dismiss a plaintiff's suit unless the court first gives the plaintiff the opportunity to amend or correct the deficiencies in the complaint. *Id.* at 1111-12. Under § 1915(e)(2), a court is required to dismiss a case when the action satisfies § 1915(e)(2)(A) or § 1915(e)(2)(B). Under the Prison Litigation Act, courts have no discretion in permitting a plaintiff to amend a complaint to avoid a *sua sponte* dismissal. If a complaint falls within the requirements of § 1915(e)(2) when filed, the district court should *sua sponte* dismiss the complaint. Section 1915A also provides for such *sua sponte* dismissals.

**GRANTED**, and this case be dismissed.  The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local*, 231, 829 F.2d 1370,1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


Date: September 12, 2007                         s/Steven D. Pepe
Ann Arbor, Michigan                              United States Magistrate Judge

CERTIFICATE OF SERVICE

       I hereby certify that on September 12, 2007, I electronically filed the foregoing paper with the Clerk Court using the ECF system which will send electronic notification to the following: Mark S. Allard, Gary J. Mouw, and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants: Catherine R. Davis, 12723 Monica, 48238

       s/ James P. Peltier
       James P. Peltier
       Courtroom Deputy Clerk
       U.S. District Court
       600 Church St.
       Flint, MI 48502
       810-341-7850
       pete_peliter@mied.uscourts.gov